May it please the Court, my name is Gordon Zeidewig. I'm with the Law Offices of Barry Gordon, John Gordon Jones, who's present here today, Your Honors. I'd like to take approximately ten minutes for my initial argument, and I'd like to reserve about five minutes for rebuttal. Sure. Your Honors, this case arises out of a meritless and groundless criminal prosecution orchestrated by the defendant to penalties, in this case, against a totally innocent man. Mr. Jones was prosecuted for rape, sexual battery, sexual assault and kidnapping. The underlying criminal case grew to include nine alleged victims and some 30 charges. After some 26 months in jail, without bail, in a six-week trial, Mr. Jones was finally vindicated when a jury of his peers acquitted him on all charges as to all the alleged victims. Mr. Jones subsequently filed this 1983 action. This case is here on appeal before this Court on a granting of summary judgment by the District Court in May 2005. Despite the legal principle that summary judgment is a drastic device, and despite the fact that the party moving for summary judgment has a very heavy burden, the trial court granted summary judgment against Plaintiff Appellant Jones over an extensive and strenuous opposition. What facts were in dispute? Well, I think the facts that were disputed, Your Honor, was the issues in regard to fabrication of evidence, and in regard to the fabrication of the police chronology. This is the Pavlik declaration where he says coffee was spilled on the chronology? Yes. He says more than that, Your Honor, and I'd just like to comment that Mr. Pavlik is an experienced police detective, had a long experience in the Los Angeles Police Department, deals with police corruption cases as his... Well, see, that would seem to me to qualify him to explain what happens if you spill coffee on a chronology. I don't see where that qualifies him to opine what was on the chronology at the time the coffee was spilled. Well, Your Honor, Mr. Pavlik had another qualification. He participated as part of Mr. Jones' defense in the criminal action that, as I said, lasted for a while. He reviewed all the evidence, he reviewed the discovery, he participated quite actively in the defense, so he knew what the facts were, what was out there, and what wasn't out there. I believe Mr. Pavlik's argument is that one certainly doesn't, if one is an experienced detective, say one believes that there was this incident with the coffee. One doesn't simply recopy the chronology, tossing pages away, and that there must be some explanation for that unusual being hidden by the detective in throwing away the pages. He thinks that it may be the contacts with the private investigator, Pellicano, who we all know about. He doesn't know. I mean, he's just guessing what was on the log. Well, Your Honor, I think it's a guess coming from someone who knows, or it's an opinion coming from someone who knows the procedures that should have been followed and knows the facts of the case and knows how these two particular police officers conducted themselves in the case and what was hidden from the plaintiff appellant hearing or the criminal defendant. So I think it's more than just a guess. I think it's an opinion based upon facts and experience. Okay. Other than the declaration, what other fact was in dispute? Well, I think you also had fabrications. The public declaration was not the only one ignored. There were three declarations by Pinacola Pinto that were simply ignored by the trial court in ruling on the motion for summary judgment. To the effect that she was coerced into making statements against Joe. She never testified at the trial? Well, Your Honor, I don't think that is the sole criteria here. I quoted Justice Scalia's language that it's used against them or if it causes some harm. That's in a concurring opinion. It's cited in the opening brief. And that clearly, there was harm. And Mr. Jones says so in his declaration. That was used to keep him 26 months in jail. Without bail. I think we could conceive that 26 months of incarceration for an innocent man is certainly harm. I don't understand how her declaration was used to keep him in jail. Well, you have to ask the judge in the defendant's criminal trial, in the plaintiff appellant's criminal trial, to explain that. I don't have to explain it. You have to explain it. Okay, Your Honor. I understand what the court is saying. But if you'll look carefully at the declaration of Mr. Jones. He was there for all the hearings. He heard what was said about why he was being kept with no bail, why he was let out, and why he was put back in jail. And that was raised as part of the reason for keeping him in jail without bail. They said they had proof that he had put Valium, he had a practice of putting Valium in the drinks of women in order to take advantage of them. So that was another issue. That she was bullied by both the police officers involved and the deputy district attorney involved. They had actually suggested testimony. They said if she didn't help him with that testimony, well, they might have to go and see about those bad check charges. They had threatened to take her daughter away. They threatened to proceed, as I said, on these bad check charges. The pressure was kept up relentlessly by the two police officers involved and by the deputy district attorney. And it didn't even stop with that. It went over into sexual harassment, as you'll see in the declaration by Ms. Colopinto. And it didn't even stop with the filing of the lawsuit. After this lawsuit was over, she was visited and pressured by the two police officers involved and their representative, their attorney. That is set forth in the last two declarations filed. There's no question there's a dispute of fact over what was done to her to get her to make her statement or not done. But I suppose the key is whether anything bad happened. In other words, the bail business is going to have to make a dispute of fact. And of course, you set up an issue of whether or not she was forced to make the statement. There's no question about that. My argument in that regard, Your Honors, on pages 22 and 23 of the brief, it quotes Justice Scalia's language and the concurring opinion in Buckley v. Fitzsimmons, which is cited there. And it also cites on the top of page 23 the specific language from the declarations of Mr. Jones in that regard. Can you help me with the chronology of this? He was out on bail for a while, right? Right. And then he was taken back. How did that come to pass? Well, there were additional Jane Doe's who were found or who came forward supposedly. And that apparently caused the judge to think there was a continuing danger. And he was... Did Nicola Pinto have anything to do with that? Well, yes, Your Honor. I think her testimony was used to show that there was this continuing danger, that this was a predator who had a practice of putting Valium in drinks to seduce women. And I think that's precisely what the Nicola Pinto testimony or fabricated evidence was used to do. It was used to coerce my client. It was urged to hamper my client. It was used to beat my client into submission. It didn't work. They gave a declaration to the judge. Is that with her signature on it? I believe so, Your Honor. I think if you'll look at the declaration that's referred to in pages 22 and 23 of the brief, which is in the record, which is Mr. Jones' brief declaration, it sets forth how it was used against him. Like I said, he was present, very actively involved in his defense. And so he knew everything that went on in that regard. You mentioned you wanted to reserve some time. Yes, Your Honor. I will reserve time. Thank you for your patience and listening to the argument. Just in way of summary, Appellant Jones is requesting here that the granting of the summary judgment be reversed and that in regard to appellees Marcia, Gizzy, the City of Los Angeles, Curlin, and the County of Los Angeles, and that this case be ordered to proceed to trial. And we think we've, as I said, Your Honor, by those declarations of Pavlik and Colopinto, we raise the issues that should have gotten us by that motion for summary judgment. We should have our day in court to argue our case. Thank you. Good morning. Good morning, Your Honors. Lisa Berger, Deputy City Attorney appearing for the City Respondent. I'll be splitting my time with counsel for the county. This is really very simple. Nine women came forward, more than nine women, but nine who ended up testifying at trial. They provided probable cause for arrest and search warrants. They provided probable cause for revocation of bail. They provided probable cause for the grand jury indictment. And they testified against Mr. Jones at trial. Nothing that the officers may have done, whether mistakenly or intentionally, had any effect on that. None of it was used against him. The chronology, Ms. Colopinto's testimony, the testimony of the jailhouse informant, none of that was ever used against him. Therefore, it caused him no harm, and there was no constitutional violation. So even assuming that tribal issues of material fact had been raised by the declarations on whether or what happened on the factual circumstances of how statements were taken, et cetera, it doesn't raise any issue of fact as to whether his constitutional rights were violated. Therefore, summary ---- Is there any dispute of fact over whether it was a factor in revocation of bail, Ms. Colopinto's statement? There was no actual evidence of that. There was Mr. Jones' opinion that that mattered. There was no transcript of the bail hearing. There was some showing that Mr. Jones had been accused of assaulting another woman after he was out on bail the first time, which in and of itself I believe is certainly cause to revoke his bail and keep him in custody. Was that one of the nine who testified? I believe it was, yes, Your Honor. I don't recall which exactly. Again, there was no ---- there was nothing but Mr. Jones and his private investigator speculating something. I must be ---- you know, he must have been framed because he's just as innocent as it could be, and the only possible way that all of these people could have come forward against him was some grand conspiracy. And there was nothing but speculation and opinion. There were no facts whatsoever to show that he was in any way harmed by any of the wrongdoing. There was no facts whatsoever showing he had been harmed. Therefore, summary judgment was appropriate and should be affirmed. The trial judge rejected the expert testimony, both on qualifications and on subject, the defense expert. Well, he found ---- she found that he was not qualified to give testimony specifically on police corruption, because although he stated he had been a member of the LAPD, he never stated that he worked on police corruption matters, was in internal affairs, anything of that sort. He gave a rather general statement that this was just the way LAPD does things and that he knew of such things, but he gave no specifics whatsoever as to what he had done, what he knew other people had done, what he knew the department was aware of or not aware of. There was just this very broad, LAPD does bad things, so this must be one of them. So it was both his qualifications to be an expert on corruption specifically, because he had no experience on that specific point, and also on the substance, because he really was providing nothing but speculation. If the Court has any other questions? Judge Nelson, anything? No. Okay. Thank you. We'll hear from the County. May it please the Court. I believe we have a situation here. Could you get your name for the record, please? My name is Tony Ray Bruneau, and I'm with Dwyer, Daly, Brosen and Bruneau. Of course, I'm here on behalf of the County of Los Angeles and on behalf of Deputy District Attorney Kerling. I think we have to begin by recognizing that Kerling had no involvement whatsoever in this chronology issue. So we haven't heard that this morning. We didn't see that in the briefs. There was nothing in the record to suggest that she had any involvement with respect to the chronology or the fabricated chronology. And then responding to one of the questions you asked counsel for the co-defendants, I believe the exclusion of the declaration of Pavlik was based on the absence of him having shown foundation, qualification to opine on corruption in police practice, as well as the fact that everything within his declaration was a matter of speculation. There was no reason basis for his conclusions, no background and expertise. And as we all know, both of those would be required to have an admissible declaration. When we get to the issue of the bail, if you will, and if that deprived Mr. Jones of constitutional right, I keep asking myself, the record shows that the bail was revoked on motion, but there's not any inappropriate or assertively inappropriate conduct on the part of any police officer or anyone else with that revocation of bail. We don't have any record other than that it was done on motion. The motion to revoke, any record? No, just that it occurred. And that you find that from the judgment role, if you will, in the criminal prosecution, which is in the record. And if we're going to make this connection, though I have grave doubts about whether or not that is a 1983 violation, whether there's a constitutional right implicated with respect to bail, which, as you know, I grieve, I think it's the appellant's responsibility to show that that occurred. Finally, let me point out that there is no evidence, no argument, that the county engaged in any custom practice. Without that, the county can't, under any circumstances, be held liable here. I know all of these issues have been brief. I don't really want to take up your time, so if there are no further questions. I would submit. Your Honor, just a few brief comments to conclude with. Every time that I've argued this case or been involved with this case, the defendants, who are now, who are the appellees here, come forth and state, there were nine women, nine women who came forward and nine women who testified. Well, that's true. And there were nine women who weren't believed. There were nine women whose testimony was found not to be credible. Well, that entitles them to an acquittal. It doesn't necessarily entitle them to a 1983 suit. Well, I agree with that, Your Honor. But just the fact that this is repeatedly stated as some support why my client shouldn't be granted relief here or shouldn't have been granted relief in the trial court, I think deserves a comment. Really, it goes to bail. And the city attorney said that a person claiming to be a victim, enough probable cause, came forward with an alleged incident after Jones was out on bail. And that would certainly cause most judges to revoke bail. I understand what the Court's saying. And I don't, and I certainly don't mean to make light of it. But, Your Honor, it was not only the nine who came forward. It was this person who knew, Pina Maria Colopinto knew my client. And her testimony or her declaration that she knew him and she'd seen him repeatedly put Valium in women's drinks, I think had a major impact upon whether he got bail or not. One wonders, Your Honor, in regard to the nine. When he was originally granted bail, she had already made that statement, hadn't she? Well, that's true, Your Honor. It couldn't be taken back. But it established if bail had been granted, then I suppose that would not be an issue here and there would be no harm. He was originally granted bail, I gather. Is that correct? That is correct, Your Honor. And if the judge knew about Colopinto's statement at that time, that would mean, it didn't seem to have any effect. Well, Your Honor, like I said, it was part of an overall concept, an overall theme that the, of the continuing danger from Mr. Jones and his past, supposed past behavior that led the court, in our opinion, to deny bail. Just finishing on that for a second, one wonders how somebody... Excuse me. This is Judge Nelson. I'm sorry, Judge. The argument, as I'm getting it, is that the individual defendants are not shown on this record to have had anything to do with the revocation of bail. How do you respond to that argument, assuming I've characterized it correctly? Well, they had something to do, Your Honor, because they participated in fabricating this evidence, fabricating... What about the revocation of bail? That's the point. And they're saying that there's no record of what caused that bail revocation, other than Jones got charged again with a similar offense. Do you say there is something in the record that shows the individual defendants had something to do with the bail revocation? That something in the record is Mr. Jones' testimony, Your Honor, in the declaration that was submitted in opposition to the summary judgment. That is referenced on page 23 of our brief. The declaration of William Povlick, paragraph 2 of that declaration that appears in page 315 of the excerpts of record, Your Honor, sets forth a career that was marked by commendations and achievement, that he was a detective supervisor, and it also set forth that he had participated in filing criminal misconduct complaints in the famous Rampart case that led to misconduct being found against various Rampart officers here in Los Angeles County. So I think the qualifications were well established, and the qualification for police corruption. I urge the Court to look at that paragraph 2, which appears on the excerpts of record, page 315. As far as Ms. Kerlin's participation in this case, Your Honor, it's undisputed that this was a vertical prosecution. She participated from the get-go in this investigation. She actively participated in the investigation. She actively coordinated with detectives, the two detectives involved, Gizzi and Marcia. She has to bear some responsibility arising out of that participation. And with that, Your Honor. So I think she said she certainly had no connection to the chronology issue. Well, that is true, Your Honor. But she also showed up at Pina Colopinto's house. She suggested she participated in the pressure being exerted on her by suggesting that, well, if you don't play ball, we might just have to prosecute you on these other charges. She suggested testimony that might be valuable, that might prevent Ms. Colopinto from being prosecuted on these other charges. It's not as if she was so totally separate from Detectives Gizzi and Marcia, and that she was sort of as pure as the driven snow, and just didn't know what was going on. She was an active participant in what happened to Ms. Colopinto. Thank you.
judges: Canby, T.G. Nelson, Silverman